UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DAWN SIMONSEN, by her attorney-in-fact
BRUCE SIMONSEN,
    Plaintiff,

v.

RODERICK L. BREMBY, in his official
capacity as Commissioner of the Connecticut
Department of Social Services,
    Defendant.

No. 15-cv-1399 (VAB)

## RULING AND ORDER GRANTING PRELIMINARY INJUNCTION

Plaintiff, Dawn Simonsen, by her attorney-in-fact, Bruce Simonsen, filed a Motion for Issuance of a Temporary Restraining Order and Preliminary Injunction [Doc. No. 19] on October 6, 2015, to enjoin Defendant, Roderick L. Bremby, Commissioner of the Connecticut Department of Social Services, from treating two third-party trusts as available resources in determining Plaintiff's eligibility for Medicaid benefits, when they were decanted to new third-party supplemental needs trusts, and from treating that decanting as disqualifying transfers of assets. For the following reasons, the Court GRANTS Plaintiff's motion for a preliminary injunction, and consequently finds as moot Plaintiff's motion for a temporary restraining order.

## I.   FINDINGS OF FACT

After holding a hearing on November 5, 2015, the Court makes the following factual findings under Federal Rule of Civil Procedure 52(a)(2), based on the arguments, written submissions, and exhibits presented by the parties.

Plaintiff, Dawn Simonsen, is a 57 year-old quadriplegic who has been a resident requiring ventilator care in the Hospital for Special Care ("HSC") in New Britain, Connecticut,

1

since October 11, 2013. She has been receiving medical assistance, or Medicaid, benefits from the Connecticut Department of Social Services ("DSS") to pay for that care since March 1, 2014, but her benefits were terminated in June 2015. They were subsequently reinstated pending an adverse fair hearing decision.

Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.* (the "Medicaid Act"), established a program for medical assistance. "Medicaid is a cooperative federal-state program through which the Federal Government provides financial assistance to States so that they may furnish medical care to needy individuals." *Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498, 502 (1990).

> The federal and state governments share the cost of Medicaid, but each state government administers its own Medicaid plan. State Medicaid plans must, however, comply with applicable federal law and regulations.
> Any state that participates in Medicaid must designate 'a single State agency' . . . to administer—or to supervise the administration of—the state's Medicaid plan.

*Shakhnes v. Berlin*, 689 F.3d 244, 247-48 (2d Cir. 2012) (internal quotation marks and citations omitted). The designated single State agency in Connecticut is DSS. The Medicaid Act requires DSS to grant an opportunity for a fair hearing to any individual whose claim for medical assistance is denied. 42 U.S.C. § 1396a(a)(3).

DSS's determination that Plaintiff is presently ineligible for Medicaid benefits stems from its classification of two former trusts of which Plaintiff was the beneficiary. Plaintiff's mother, Joy A. Miller, established these two third party inter vivos trusts—the Dawn Simonsen GST Trust" and the "Dawn Simonsen Residuary Trust" (the "Predecessor Trusts")—in Florida, and they were funded upon her death in April 2003. The terms of these trusts provided the following:

> The trustee shall pay to my daughter or utilize for her benefit so much of the income and principal of her trust as the trustee deems necessary or advisable from time to time for her health, maintenance in reasonable comfort, education and best interests considering all of her resources known to the trustee and her ability to manage and use such funds for her benefits.  In exercising its discretion the trustee shall bear in mind that my daughter has suffered severely from alcohol and drug abuse and that I do not want these trust funds to be used to support a drug or alcohol habit or any other activity which may be detrimental to her in the trustee's sole opinion.
>
> My daughter's health, happiness and best interests are to be considered foremost in priority over those who will receive the remaining trust funds on her death.  Subject to the above considerations the trustee is encouraged to be liberal in its use of the funds for her even to the extent of the full expenditure thereof.

Doc. No. 23-2, at 7, 8-9.  The Predecessor Trusts also contain a "spendthrift clause," which provides that "[t]he interests of beneficiaries in principal or income shall not be subject to the claims of any creditor, any spouse for alimony or support, or others, or to legal process, and may not be voluntarily or involuntarily alienated or encumbered."  Doc. No. 23-2, at 13.  Further, the Predecessor Trusts were established such that they are governed by Florida law.  Doc. No. 23-2, at 20-21.

As noted above, Plaintiff was admitted to HSC on October 11, 2013, and she has remained there as a patient virtually continuously since that date.  On July 31, 2014, a Medicaid benefits application for Plaintiff was filed with DSS.  On August 29, 2014, the Trustee of the Predecessor Trusts executed a petition to the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida, Probate Division (the "Florida Probate Court"), requesting an order declaring that the Trustee's right to invade the principal of the Predecessor Trusts "is an absolute power to invade principal as described in Section 736.04117, Florida Statutes," and granting permission to transfer, or "decant," the assets in the Predecessor Trusts to two new trusts—the "Dawn Simonsen Third Party Special Needs Trust I" and the "Dawn Simonsen Third Party Special Needs Trust II" (the "Successor Trusts").  Along with its petition, the Trustee

submitted a Waiver of Service of Process and Consent, executed by Plaintiff on August 22, 2014, in which Plaintiff consented to the entry of such an order and to the exercise of such power to invade principal. The Florida Probate Court issued the requested order on September 18, 2014. As of September 30, 2014, the Predecessor Trusts had a combined value of over one million dollars, which subsequently transferred to the Successor Trusts between November 1, 2014 and February 28, 2015.

On November 26, 2014, a DSS attorney sent an email to a DSS eligibility services worker in the Long Term Care Unit, opining that the Predecessor Trusts were "general support trusts and, therefore, available to the client for Medicaid eligibility," and that Plaintiff's "consent to transfer of assets in two general support trusts to two supplemental support trusts should be treated as a transfer of assets for less than fair value." Doc. No. 23-4. The DSS attorney concluded that, because Plaintiff was applying for "N01" assistance, for which there is no asset limit, the transfers were not relevant, but that should Plaintiff apply for "L01" assistance, she would incur a penalty period during which she would be ineligible for benefits. *Id.* This email was forwarded to the law firm representing Plaintiff on December 3, 2014. Also on December 3, 2014, DSS determined that Plaintiff was eligible for Medicaid benefits effective March 1, 2014 through August 31, 2015 under the N01 eligibility rules. After August 2015, Plaintiff would have had to apply for L01, *i.e.*, Medicaid Long-Term Care Assistance, in order to maintain her eligibility for long-term services and support.

On December 16, 2014, counsel for Plaintiff responded to DSS counsel's email, disputing DSS's analysis. DSS counsel wrote back on January 6, 2015, adhering to his original eligibility opinion. After further written exchanges between counsel, DSS counsel advised counsel for Plaintiff, in a letter dated June 19, 2015, that the penalty period of Medicaid

ineligibility should actually have begun on September 8, 2014,[1] and that DSS intended to recover all Medicaid benefits that had been paid since that date. On July 8, 2015, DSS issued a Final Decision Notice stating that, due to the trust-to-trust transfer, DSS was setting up a penalty period from September 1, 2014 through September 5, 2021, during which time DSS would not pay for any long-term care services, including under N01.

After Plaintiff did not receive any Medicaid benefits for July 2015, Plaintiff's counsel requested an administrative fair hearing from DSS to review the termination of Plaintiff's Medicaid benefits on August 3, 2015. The request for fair hearing included a request that Plaintiff's benefits continue until a hearing decision was made, and DSS complied by reinstating Plaintiff's N01 eligibility on September 21, 2015, pending the hearing decision. Following the fair hearing held on September 23, 2015, the fair hearing officer issued a decision denying Plaintiff's appeal on December 14, 2015.

In her notice of decision, the fair hearing officer found, *inter alia*, the following key facts: the Predecessor Trusts were general support trusts and thus accessible to Plaintiff for purposes of determining Medicaid eligibility (Doc. No. 35, at 4); as of September 30, 2014, the combined value of the Predecessor Trusts was $1,021,930.99 (*id.*, at 5); the Successor Trusts limited Plaintiff's ability to access the trusts to the extent that the assets are not available to Plaintiff for purposes of determining Medicaid eligibility (*id.*, at 6); some time between September 18, 2014 and February 28, 2015, the funds from the Predecessor Trusts were transferred to the Successor Trusts (*id.*); and DSS decided to penalize Plaintiff $1,022,602.36 for the period commencing September 1, 2014 and ending September 5, 2021 for the transfer of assets for less than fair market value (*id.*, at 7).

---

[1] DSS appears to have erred in its factual analysis, as the date on which the Florida Probate Court issued its order approving the decanting was September 18, 2014, and not September 8, 2014.

5

Based on these factual findings, the fair hearing officer determined that made, *inter alia*, the following key conclusions of law: DSS correctly determined Plaintiff's eligibility for Medicaid under the N01 plan for the period of September 1, 2014 through August 31, 2015 (*id.*, at 8); the Social Security Program Operations Manual System is a form of internal guidance for the Social Security Administration and does not constitute policy or have the force of law (*id.*, at 9); DSS did not use more restrictive methodology than the Supplemental Security Income ("SSI") methodology (*id.*); the State of Connecticut's regulatory standard is entirely consistent with the plain language of 20 C.F.R. § 416.1201(a)(1) (*id.*); the DSS Uniform Policy Manual provides that the principal of an irrevocable trust should be considered an available asset if there are any circumstances under which a payment from the trust could be made to or on behalf of the individual (*id.*, at 10); DSS was correct to find that Plaintiff transferred funds from the purpose of qualifying for Long Term Care Medicaid (*id.*, at 11); and DSS incorrectly began the penalty period on September 1, 2014 because the penalty period must begin on the date when the funds were actually transferred, which did not occur until some time between September 18, 2014 and February 28, 2015 (*id.*, at 12).

Four main points underscored the fair hearing officer's decision upholding the penalty imposed by DSS. First, she noted that the language of the Predecessor Trusts encouraged the trustee to be liberal in its use of funds for Plaintiff, even to the extent of the full expenditure thereof. *Id.*, at 13. Second, she determined that the Social Security Program Operations Manual System and its treatment of the spendthrift clause carried no weight, as it was merely a form of internal guidance that was not adopted through the Administrative Procedure Act. *Id.* (citing the *Binder & Binder v. Bainhart*, 481 F.3d 141, 151 (2d Cir. 2007)). Third, she concluded that Connecticut's regulatory standard is entirely consistent with the plain language of 20 C.F.R.

6

§ 416.1201(a)(1), which defines resources for purposes of SSI. *Id*. Fourth, she found the reasoning in the October 24, 2007 Connecticut Superior Court decision in *Rome v. Wilson-Coker*, Case No. HHBCV064012367S—which held that Connecticut's statutory definition of available assets and regulatory application of that definition to non-self-settled trusts is almost identical to the SSI regulatory definition of resources—to further support DSS's position. *Id*.[2]

## II.   PRELIMINARY INJUNCTION STANDARD

"When seeking a preliminary injunction that will affect government action taken in the public interest pursuant to a statutory or regulatory scheme, the moving party must show: (1) it will suffer irreparable harm absent the injunction and (2) a likelihood of success on the merits." *Rodriguez v. DeBuono*, 175 F.3d 227, 233 (2d Cir.1999) (quotation marks omitted). Following an adverse ruling by a State of Connecticut administrative body, a higher standard of "clear" or "substantial" showing of a likelihood of success applies because the entering of a preliminary injunction in this case "will alter, rather than maintain, the status quo." *Tom Doherty Associates, Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995).

## III.   CONCLUSIONS OF LAW

As required under Federal Rule of Civil Procedure 52(a)(2), the Court issues the following conclusions of law:

### A.   IRREPARABLE HARM

"[T]he denial of Medicaid benefits has been recognized as *per se* irreparable injury." *Fortmann ex rel. Rubino v. Starkowski*, No. 3:10-cv-1562, 2011 WL 4502939, at *4, 2011 U.S. Dist. LEXIS 115593, at *16, (D. Conn. Jan. 13, 2011) (holding that "[u]npaid nursing home

---

[2] In *Rome*, the court affirmed a DSS decision to deny Medicaid benefits largely on the reasoning that, if a beneficiary can compel a distribution from a trustee in court, that is equivalent to SSI's requirement that the beneficiary can direct the use of the trust principal. *Rome*, 2007 WL 3318083, at *10-11, 2007 Conn. Super. LEXIS 2779, *28-30 (Conn. Super. Ct. Oct. 24, 2007).

bills, the potential loss of medical assistance at the nursing home, and poor health that plaintiff may suffer in the absence of care, cannot be addressed by a promise of future Medicaid coverage, particularly when the Eleventh Amendment Immunity substantially limits an award of monetary damages against defendant"); *see also Beltran v. Myers*, 677 F.2d 1317, 1322 (9th Cir. 1982). Moreover, "there is Second Circuit and out-of-circuit appellate law holding that the mere *threat* of a loss of medical care, even if never realized, constitutes irreparable harm." *Strouchler v. Shah*, 891 F. Supp. 2d 504, 522 (S.D.N.Y. 2012). Since the decision by the Connecticut administrative body threatens the denial of Medicaid benefits, Plaintiff has satisfied her burden of showing that irreparable harm will exist without the issuance of a preliminary injunction.

      **B.**     **LIKELIHOOD OF SUCCESS ON THE MERITS**

Plaintiff also must satisfy her burden of establishing a clear showing of a likelihood of success on the merits. Given the applicable law, the Court concludes that the funds once available in the Predecessor Trusts were not available resources for purposes of determining Ms. Simonsen's Medicaid eligibility.

The Medicaid Act prohibits DSS from employing a methodology for determining income and resource eligibility that is more restrictive than the methodology which would be employed under the SSI program, as administered by the United States Social Security Administration (the "SSA"). *See* 42 U.S.C. §§ 1396a(a)(10)(C)(i), 1396a(r)(2). In this case, Plaintiff's Medicaid benefits are being terminated on the basis of DSS's determination that the Predecessor Trusts were available resources for purposes of determining her eligibility. The parties agree that the relevant regulation in the SSI context is 20 C.F.R. § 416.1201, which provides that resources are "cash or other liquid assets or any real or personal property that an individual . . . owns and could convert to cash to be used for his or her support and maintenance." The regulation further

provides that: "If the individual has the right, authority or power to liquidate the property or his or her share of the property, it is considered a resource. If a property right cannot be liquidated, the property will not be considered a resource of the individual (or spouse)." 20 C.F.R. § 416.1201(1). Thus, "[f]or SSI purposes, if an individual has no authority to liquidate a property right, it is not an 'available resource.'" *Brown v. Day*, 434 F. Supp. 2d 1035, 1037-38 (D. Kan. 2006).

The SSA has additional guidance that clarifies the meaning of this phrase, "if an individual has no authority to liquidate a property right, it is not an 'available resource.'" The SSA's Program Operations Manual System ("POMS") "is a primary source of information used by Social Security employees to process claims for Social Security benefits." *POMS Home*, Social Security Administration, https://secure.ssa.gov/apps10/poms.nsf/Home?readform (last visited Dec. 23, 2015). As the Second Circuit recently explained: [3]

> The POMS is a set of guidelines through which the Social Security Administration further construes the statutes governing its operations. We have held that POMS guidelines are entitled to substantial deference, and will not be disturbed as long as they are reasonable and consistent with the statute. But we have declined to defer to the POMS where the plain language of the statute and its implementing regulation do not permit the construction contained within the manuals.

*Lopes v. Dep't of Soc. Servs.*, 696 F.3d 180, 186 (2d Cir. 2012).

Congruent with the relevant regulation, the POMS details the three elements required for something to be considered a resource: an ownership interest; the right, authority, or power to convert it to cash; and the legal right to use it for one's support and maintenance. *See*, *e.g.*, POMS § SI 01120.010, POMS § SI 01110.100B.1, POMS § SI 01110.100B.3; POMS § SI 01110.115A; POMS § SI 01120.200D. If any one of these elements is missing from an asset, the

---

[3] While the notice of decision from the Connecticut administrative hearing officer suggests that the POMS was not entitled to deference, *see* Doc. No. 35, at 9, 13, this Court must follow precedent from the Second Circuit and will do so.

9

SSA will not consider it to be a resource for purposes of determining eligibility for SSI.  Nothing in this standard conflicts with the regulation's requirement that a resource be property that an individual owns and could convert to cash to be used for his or her support and maintenance.  In fact, it is merely a restatement of the regulation's language.  Consequently, all three elements reasonably and consistently described by the POMS as requirements for qualifying an asset as a resource must also exist for an asset to be considered a resource for purposes of determining Medicaid eligibility.

> Applying this standard specifically in the context of trusts, the POMS notes:
>
> If an individual has legal authority to revoke or terminate the trust and then use the funds to meet his food or shelter needs, or if the individual can direct the use of the trust principal for his or her support and maintenance under the terms of the trust, the trust principal is a resource for SSI purposes.  Additionally, if the individual can sell his or her beneficial interest in the trust, that interest is a resource.  For example, if the trust provides for payment of $100 per month to the beneficiary for spending money, absent a prohibition to the contrary (e.g., a valid spendthrift clause), the beneficiary may be able to sell the right to future payments for a lump-sum settlement.

POMS SI § 01120.200D.1.a.  In short, a trust is a resource under federal SSI methodology if: (1) the beneficiary can revoke or terminate the trust and freely use the funds; (2) the beneficiary can, under the terms of the trust, direct the use of trust principal for his or her support and maintenance; or (3) if the individual can sell his or her beneficial interest in the trust.  The POMS, however, further notes that trust beneficiaries generally do not have the power to terminate a trust, and only in rare instances do they have the authority under the trust to direct the use of trust principal, through specific trust provisions either allowing the beneficiary to act on his or her own or by permitting the beneficiary to order actions by the trustee.  POMS SI § 01120.200D.1.b.

The Predecessor Trusts in this case do not contain terms providing the beneficiary with any right or authority to direct any payments, and instead empowered the Trustee with the sole discretion to determine when to make a distribution.  While it is true that some courts have found that a "support trust," which is a trust that requires the trustee to apply trust income or principal to support the beneficiary, is to be considered an available resource for determining Medicaid eligibility, *see*, *e.g.*, *Corcoran v. Dep't of Social Services*, 271 Conn. 679, 698-700 (2004), "[t]rust language, such as for the beneficiary's 'benefit,' or 'best interests,' or 'general well being,' broaden the settlor's instructions to the trustee, and go beyond the limits of a support trust," H. Shapo, G. Bogert & G. Bogert, Law Of Trusts And Trustees § 229 (2015).

In addition, the Predecessor Trusts are governed by the laws of Florida, under which a trustee's "power to invade principal for purposes such as best interests, welfare, comfort, or happiness shall constitute an absolute power not limited to specific or ascertainable purposes." Fla. Stat. Ann. § 736.04117.  The terms of the Predecessor Trusts provide that the Trustee's discretion is to be guided by considerations of Plaintiff's health, happiness, maintenance in reasonable comfort, education and best interests.  Thus, these trusts were "not limited to specific or ascertainable purposes," and that they "go beyond the limits of a support trust."

Moreover, the Predecessor Trusts contained a valid spendthrift clause.[4]  A spendthrift trust "is to be distinguished from a trust for support and from a discretionary trust," Restatement (Second) of Trusts § 152 cmt. b (citations omitted), but it "may or may not also contain discretionary interests," Restatement (Third) of Trusts § 58 cmt. a.  A spendthrift clause is a

---

[4] As relevant to this action, the Predecessor Trusts contained the following clause: "<u>Spendthrift</u>.  The interests of beneficiaries in principal or income . . . may not be voluntarily or involuntarily alienated or encumbered.  This provision shall not limit the exercise of any power of appointment."  Doc. No. 23-2, at 13.  While not all states recognize spendthrift clauses, *see* POMS SI § 01120.200B.16, the Predecessor Trusts were established and governed under Florida law, and "Florida law recognizes the validity of spendthrift trusts," *Miller v. Kresser*, 34 So. 3d 172, 175 (Fla. Dist. Ct. App. 2010).

11

provision in a trust that "prohibits both involuntary and voluntary transfers of the beneficiary's interest in the trust income or principal. . . . In other words, a valid spendthrift clause would make the value of the beneficiary's right to receive payments not countable as a resource." POMS SI § 01120.200B.16.

Consistent with the federal regulation and the other guidelines contained in the POMS, the existence of a spendthrift clause means that a beneficiary cannot revoke or terminate the trust, nor direct the use of trust principal, nor sell his or her beneficial interest in the trust.  *See*, *e.g.*, *Tidrow v. Dir., Missouri State Div. of Family Servs.*, 688 S.W.2d 9, 13-14 (Mo. Ct. App. 1985) (trust containing spendthrift clause and clause giving trustee discretion to disburse funds for beneficiaries' "reasonable comfort" held to be not available for Medicaid purposes); *Miller v. Ibarra*, 746 F. Supp. 19, 26-27 (D. Colo. 1990) (collecting cases to support holding that trust did not count as an available resource for Medicaid eligibility).

In short, if a trust contains a spendthrift clause, the beneficiary has no legal right or authority to access the trust principal, and, therefore, it is not counted as an available resource for SSI, and consequently Medicaid, eligibility purposes.  While the total refusal of the trustee to make any payments from a spendthrift trust's interest or principal might, under some circumstances, constitute an abuse of the trustee's discretion as conflicting with the settlor's intent, "[the SSA] do[es] not require litigation to obtain access, the property is not a resource." POMS SI § 01120.010D.7.

Under Florida law, which governed the Predecessor Trusts, the spendthrift clause would be invalid if they provided Plaintiff "with express control to demand distributions from the trust or terminate the trust and acquire trust assets."  *Miller v. Kresser*, 34 So. 3d 172, 175 (Fla. Dist. Ct. App. 2010).  If such circumstances existed, the Predecessor Trusts also would meet the

requirements articulated in the POMS guidelines to be considered an available resource. However, there are no provisions in the Predecessor Trusts that could reasonably be construed to provide "express control."

As a result, the SSA would not consider the Predecessor Trusts to be available resources for determining SSI eligibility, and thus the Predecessor Trusts may not be considered available resources for determining Medicaid eligibility either. *See Brown v. Day*, 434 F. Supp. 2d 1035, 1037 (D. Kan. 2006) ("In determining income and resource eligibility for Medicaid, states may not employ a methodology which renders an individual ineligible for Medicaid where that individual would be eligible for SSI.").[5]  Accordingly, Plaintiff has demonstrated a substantial likelihood of success on the merits.

## III.   CONCLUSION

Based on the foregoing, the Court concludes that pending final judgment in this case, Plaintiff is entitled to a preliminary injunction which prevents Defendant from terminating her Medicaid benefits.[6]  Therefore, Plaintiff's Motion [Doc. No. 19] for Preliminary Injunction is GRANTED; and

---

[5] This analysis is consistent with a number of court rulings holding that trusts with terms similar to the trust in this case should not be considered as available resources. *E.g.*, *Chenot v. Bordeleau*, 561 A.2d 891, 894 (R.I. 1989) (trust language requiring that trustee make disbursements it deems "necessary or advisable for [the beneficiary's] comfort, support, and welfare" held "to be an insignificant limitation on the trustee's discretionary powers," and thus the trust should not count as an available resource); *Lang v. Com., Dep't of Pub. Welfare*, 515 Pa. 428, 442-48 (1987) (trust providing that "Trustee shall use so much of the principal as may in her opinion be advisable therefor, for the support, maintenance, welfare, comfort and support of my son" was a discretionary trust limited by a support standard based on beneficiary's situation and thus not an available resource") ; *Oddo v. Blum*, 442 N.Y.S.2d 23, 24 (1981) (holding trust could not be considered available resource even where trustee authorized to invade the principal for beneficiary when "necessary and proper" for her benefit because trustee had discretion "to refuse to invade the trust principal on the ground that the high cost of the nursing home in which [Medicaid applicant] resided would rapidly deplete the trust assets" and "[i]t is not clear whether the testatrix, if aware of the present facts, would desire to pay the immense cost of her sister's care, in preference to having society share the burden").

[6] Consequently, the Court finds Plaintiff's Motion [Doc. No. 19] for Temporary Restraining Order to be moot.

IT IS HEREBY ORDERED that, pending final judgment on the merits or further order of the Court, Defendant is restrained, enjoined, and prohibited from:

(a) terminating Plaintiff's Medicaid benefits;

(b) considering the Predecessor Trusts to be available resources for purposes of determining Medicaid eligibility; and

(c) treating the decanting of funds from the Predecessor Trusts into the Successor Trusts as transfers of assets disqualifying Plaintiff from Medicaid.

SO ORDERED at Bridgeport, Connecticut, this 23rd day of December, 2015.

    /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge